**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. _____

18 U.S.C. § 1956(h)
18 U.S.C. § 982

**UNITED STATES OF AMERICA**

vs.

**JUAN RIBAS DOMENECH,**

        **Defendant.**
_____/

### FACTUAL PROFFER IN SUPPORT OF GUILTY PLEA

The United States Department of Justice, Criminal Division, Fraud Section (the "government"), and the Defendant, Juan Ribas Domenech (the "defendant"), stipulate and agree that the information stated herein is true and accurate and a sufficient basis for the defendant's plea of guilty to the money laundering conspiracy in violation of Title 18, United States Code, Section 1956(h) charged in the instant case. Had this matter proceeded to trial, the defendant stipulates and agrees that the government would have proven the facts alleged below beyond a reasonable doubt and the forfeiture allegations set forth in the criminal Information by a preponderance of the evidence.

Seguros Sucre S.A. ("Seguros Sucre") was the state-owned and state-controlled insurance company in Ecuador. Seguros Sucre performed government functions for and on behalf of Ecuador. The defendant was an Ecuadorian citizen who served as a public servant as the Chairman of the Board of Seguros Sucre and an advisor to the then-President of Ecuador. In those official capacities, the defendant had authority over the awarding of Seguros Sucre business. During the relevant time period, the defendant obtained more than two million dollars in bribes in exchange

1

for using his official positions to allow three U.K.-based reinsurance brokers ("Insurance Broker 1", "Reinsurance Broker 1", and "Reinsurance Broker 2") to obtain and retain contracts with Seguros Sucre. The defendant was introduced to Insurance Broker 1 by a Panama-registered company that operated from Miami, Florida as a reinsurance introducer ("Introducer Company 1"). Separately, he was introduced to Reinsurance Brokers 1 and 2 by an Ecuador-based reinsurance introducer ("Introducer Company 2"). Introducer Companies 1 and 2 helped companies obtain and retain contracts with Seguros Sucre in exchange for receiving a commission.

<u>Overview of Criminal Schemes Involving Insurance Broker 1 (Scheme 1)</u>

Between in or around 2013 and in or around 2017, the defendant and others—including Roberto Heinert ("Heinert") and Jose Vicente Gomez Aviles ("Gomez"), co-owners of Introducer Company 1, and Felipe Moncaleano Botero ("Moncaleano"), the CEO of the Colombian-based subsidiary of Insurance Broker 1 during the relevant time period—knowingly and willfully agreed to offer, give, and promise an improper economic benefit of at least approximately $2,957,000 in bribes to the defendant and other Ecuadorian public servants in order to carry out, omit, expedite, delay or condition matters related to their functions, that is to assist Insurance Broker 1 in obtaining and retaining business with Seguros Sucre ("illegal bribery scheme 1").

Further, from in or around 2013 and continuing until at least 2017, the defendant knowingly and willfully conspired with others, including Heinert, Gomez, and Moncaleano , to conceal and disguise the nature, location, source, ownership, and control of the proceeds of illegal bribery scheme 1 and the corruptly obtained contracts. The defendant knew that this conduct was unlawful.

Specifically, between in or around 2014 and in or around 2017, Introducer Company 1 received approximately $10.8 million in commission payments from Insurance Broker 1 on

Insurance Broker 1's corruptly obtained business with Seguros Sucre. The defendant's co-conspirators then laundered a portion of the commissions to the defendant and other Ecuadorian government officials, including to accounts held in the defendant's name, the names of the defendant's relatives, and the name of a nominee account holder for the defendant's benefit. The defendant and his co-conspirators laundered at least approximately $1,004,000 of the commissions through bank accounts in the United States for the benefit of the defendant. In furtherance of the conspiracy, and with the intent to conceal and disguise the nature, location, source, ownership, and control of the proceeds of illegal bribery scheme 1, the defendant and his co-conspirators, among other things, transferred the corrupt proceeds to and through multiple intermediary companies, including shell company bank accounts in Switzerland; disguised bribe payments through private securities purchases; and provided false justifications for transactions to banks, Insurance Broker 1's compliance personnel, and others.

Illegal Bribery Scheme 1

In or around June 2013, Insurance Broker 1 obtained reinsurance business from Seguros Sucre to be the reinsurance broker for the Ecuadorian Ministry of Defense ("MOD") for the period 2013 through 2014. In or around late 2013, Seguros Sucre informed Insurance Broker 1 that Seguros Sucre might not renew Insurance Broker 1's MOD reinsurance policy. In or around early 2014, Moncaleano approached Introducer Company 1 about helping Insurance Broker 1 retain the Seguros Sucre MOD business. Gomez and Heinert arranged meetings between Insurance Broker 1 and the defendant, following which Seguros Sucre agreed to retain Insurance Broker 1's MOD policy. The defendant and his co-conspirators agreed that the defendant would receive bribes in exchange for allowing Insurance Broker 1 to obtain and retain business from Seguros Sucre.

In or around May 2014, after Seguros Sucre agreed to maintain Insurance Broker 1's MOD

policy, Insurance Broker 1 approved Introducer Company 1 as an introducer. Insurance Broker 1 approved the payment of any commissions to Introducer Company 1's Panama bank account given that Introducer Company 1 was a Panama-registered company. In or around September 2014, Insurance Broker 1 and Introducer Company 1 reached an agreement whereby Insurance Broker 1 agreed to pay Introducer Company 1 $1.8 million commission for the MOD 2013 through 2014 contract and an 8% commission on the MOD 2014 through 2015 contract. The commission payments to Introducer Company 1, however, were not made to its approved Panama bank account. Rather, at Gomez and Heinert's request and with Moncaleano's approval, the $10.8 million in commissions from Insurance Broker 1 to Introducer Company 1 were paid to accounts in the United States, Panama, and Switzerland that were not held in Introducer Company 1's name.

For example, on or about June 4, 2014, with the help of a financial advisor who was also a co-conspirator in the illegal bribery scheme and money laundering scheme ("Financial Advisor"), Gomez opened a bank account in Switzerland ("Intermediary Company 1 brokerage account"), which he used to receive Introducer Company 1's commissions from Insurance Broker 1 as approved by Moncaleano. Specifically, from on or about October 2, 2014 to on or about October 28, 2016, a U.S. bank account held by Insurance Broker 1's Colombian-based subsidiary made at least eleven wire transfers totaling at least approximately $6,510,735 to the Intermediary Company 1 brokerage account. These payments were Introducer Company 1's commissions from the corruptly obtained reinsurance policies with Seguros Sucre to insure MOD and other state-owned entities of Ecuador. Based on their prior agreement, the defendant received a portion of these commissions in exchange for having used his official positions to assist Insurance Broker 1 obtain and retain the reinsurance policies from Seguros Sucre.

The Money Laundering Related to Scheme 1

Between in or around June 2014 and in or around June 2016, the defendant and his co-conspirators engaged in the following money laundering scheme. Gomez and Heinert, with the aid of Financial Advisor, caused the Intermediary Company 1 brokerage account, which was funded almost exclusively with Insurance Broker 1 commission payments to Introducer Company 1, to transfer at least approximately $682,000 in cash and $1,975,000 worth of securities ($2,657,000 total value) to a bank account in Switzerland held by a nominee company for the benefit of the defendant ("Intermediary Company 2 brokerage account"). All but one of these transfers were made though U.S.-based accounts held by a Cayman Islands company ("Intermediary Company 3").

Through its Swiss-based brokerage account, Intermediary Company 2 laundered a portion of the approximately $2,657,000 it received through Intermediary Company 3 to U.S.-based accounts controlled by the defendant, including at least approximately $450,000 into U.S.-based accounts held by the defendant and at least approximately $254,000 into U.S.-based accounts held jointly by the defendant and his relatives.

Separately, on or about December 18, 2014, the defendant and his co-conspirators also laundered approximately $300,000 of Insurance Broker 1 commission payments received by the Intermediary Company 1 brokerage account through Intermediary Company 3 to a U.S.-based bank account held in the defendant's name.

The defendant had at least one meeting with Moncaleano, Gomez, Heinert and other co-conspirators in Miami, Florida to discuss illegal bribery scheme 1 and the related money laundering scheme.

Overview of Criminal Schemes Involving Reinsurance Brokers 1 and 2 (Scheme 2)

Between in or around 2014 and in or around 2016, certain individuals associated with Introducer Company 2 and others knowingly and willfully agreed to offer, give, and promise an improper economic benefit of at least approximately $2,079,465 in bribes to the defendant, an Ecuadorian public servant, in order to carry out, omit, expedite, delay or condition matters related to his functions, that is to assist Reinsurance Broker 1 and Reinsurance Broker 2 in obtaining and retaining business with Seguros Sucre ("illegal bribery scheme 2").

Further, from in or around 2014 and continuing until at least 2016, the defendant knowingly and willfully conspired with others, including an agent of Introducer Company 2, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of illegal bribery scheme 2 and the corruptly obtained contracts. The defendant knew that this conduct was unlawful.

Specifically, between in or around 2014 and in or around 2016, Introducer Company 2 received commission payments from Reinsurance Broker 1 and Reinsurance Broker 2 on corruptly obtained business with Seguros Sucre. The defendant's co-conspirators then laundered a portion of the commissions to the defendant, including to accounts held in the defendant's name, the names of the defendant's relatives, and the name of a nominee account holder for the defendant's benefit. The defendant and his co-conspirators laundered at least approximately $2,079,465 of the commissions through bank accounts in the United States for the benefit of the defendant. In furtherance of the conspiracy, and with the intent to conceal and disguise the nature, location, source, ownership, and control of the proceeds of illegal bribery scheme 2, the defendant and his co-conspirators, among other things, transferred the corrupt proceeds to and through multiple intermediary companies, including shell company bank accounts in Switzerland; disguised bribe payments through private securities purchases; and provided false justifications for transactions to

banks, and others.

Illegal Bribery Scheme 2

Between in or around 2014 and in or around 2016, Reinsurance Broker 1 and Reinsurance Broker 2 obtained business from Seguros Sucre. The defendant approved the award of this business in return for bribe payments which were made by Introducer Company 2. Reinsurance Broker 1 and Reinsurance Broker 2 paid commissions on this business to Introducer Company 2. The defendant and his co-conspirators agreed that a portion of the commissions Introducer Company 2 received would be passed to the defendant, in exchange for the defendant using his official position to secure an improper advantage in order to assist the Introducer Company 2 in obtaining and retaining business for Reinsurance Broker 1 and Reinsurance Broker 2 from Seguros Sucre.

The Money Laundering Scheme 2

Between in or around July 2014 and in or around January 2016, the defendant and his co-conspirators engaged in the following money laundering scheme. The defendant and his co-conspirators, with the aid of Financial Advisor, caused Introducer Company 2 to transfer at least approximately $2,079,465 to accounts held by or for the benefit of the defendant. The accounts included Intermediary Company 2, and two additional U.S.-based accounts held by or for the benefit of the defendant ("Intermediary Company 4" and "Intermediary Company 5").

Specifically, between in or around October 2015 and in or around January 2016, the defendant and his co-conspirators caused Introducer Company 2 to transfer at least approximately $905,627 to Intermediary Company 2 brokerage account for the benefit of the defendant. From between in or around July 2014 and in or around August 2015, the defendant and his co-conspirators caused Introducer Company 2 to transfer at least approximately $1,038,897 to

7

Intermediary Company 4. Additionally, from between in or around September 2014 and in or around October 2014, defendant and his co-conspirators caused Introducer Company 2 to transfer at least approximately $134,941 to Intermediary Company 5.

The defendant, knowing that his conduct was wrong and unlawful, conducted and attempted to conduct various financial transactions involving interstate and foreign commerce including using U.S. bank accounts, knowing that the property involved in the transactions represented the proceeds of illegal bribery schemes 1 and 2, and acting with the intent to conceal and disguise the true nature, source, location, ownership, and control of the proceeds of the illegal bribery schemes.

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for the defendant's guilty plea to the charge against him. It does not include all the facts known to the defendant concerning criminal activity in which the defendant and others engaged. The defendant makes this statement knowingly and voluntarily and because he is in fact guilty of the crime charged.

ACTING ~~ROBERT ZINK~~ DANIEL KAHN
CHIEF, FRAUD SECTION
DEPARTMENT OF JUSTICE

Date: 9/11/20

By: _____
KATHERINE RAUT
ALEX KRAMER
LA'NESE CLARKE
TRIAL ATTORNEYS

Date: 7/14/20

_____
JEFF MARCUS, ESQ.
ATTORNEYS FOR DEFENDANT

Date: 7/14/20

_____
JUAN RIBAS DOMENECH
DEFENDANT